IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2021

## STATE OF TENNESSEE v. SHAWN CASEY WALKER

**Appeal from the Circuit Court for Cocke County**
**No. 9170      Carter Scott Moore, Judge**

_____

### No. E2020-01418-CCA-R3-CD

_____

Defendant, Shawn Casey Walker, pleaded guilty to one count of aggravated cruelty to animals, a Class E felony. Following a sentencing hearing, the trial court imposed a sentence of two years in confinement. On appeal, Defendant challenges the trial court's denial of an alternative sentence. Having reviewed the record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Edward Cantrell Miller, District Public Defender; Keith E. Haas, Assistant District Public Defender, for the appellant, Shawn Casey Walker.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and S. Joanne Sheldon, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### Sentencing hearing

The record does not contain a transcript of the guilty plea hearing; therefore, the only facts to be gleaned from the record are those presented at the sentencing hearing.

Christopher Green, Defendant's cousin, testified that he had served in the Marine Corps for five years. When he returned home, he discovered that his family had been

"taking advantage" of his grandmother, Zora Sane. Mr. Green began looking after his grandmother because she was on "pretty serious medication" and received an SSI check. Around July of 2019, he placed security cameras inside his grandmother's apartment to prevent family members from stealing his grandmother's medication and her money.

Defendant was also a grandson of Ms. Sane.[1] Defendant moved in with his grandmother in August, 2019. Mr. Green testified that Defendant did not have a job and that he was "taking stuff from [their] grandmother's house." Mr. Green attempted to remove Defendant and his sister from the house "because they were being a nuisance."

On the night before Thanksgiving Day in 2019, Mr. Green took dog food and treats to his grandmother's home for her dog "Reesie," a Dachshund. Reesie had been "part of the family for [ ] ten years." On Thanksgiving morning, Defendant's sister called Mr. Green and told him that the dog was dead. Mr. Green watched the security camera footage and saw that Defendant picked up the dog from under the front of a reclining chair, put the dog on the couch beside him, and began punching the dog. Defendant then took off his shirt and wrapped it around his hand and continued to punch the dog "for an hour, an hour just beating her, kicking her, everything." Mr. Green testified that his grandmother, who was deaf and blind, was sitting in the recliner while Defendant beat the dog.

Mr. Green testified that Reesie was his grandmother's sole companion and "like a comfort animal" to her. He testified that his grandmother had cared for the dog for ten years and that the dog "was like her daughter." He testified, "It was like a human. It was the closest thing, other than what family she did have, but she was family." He testified, that his grandmother and Reesie "were always together . . . no matter what she was doing. So now that she's not there, it's kind of like a, it's an empty space. She's not there no more." Mr. Green testified that the dog had never been aggressive.

Mr. Green provided prosecutors in this case with a video recording of the incident. Mr. Green testified that he and his brother monitored the security camera footage regularly and that he had not seen Defendant mistreat the dog before Thanksgiving Day. Mr. Green's brother, Nick Green, testified similarly.

Defendant testified that he began counseling at Cherokee Health Systems one month prior to sentencing and had been to one counseling session. Defendant testified that he "tried to" take care of his grandmother, but he acknowledged, "as they stated, I could have done a better job." Defendant admitted that he killed his grandmother's dog. He testified that he had been drinking and he did not "remember much." He testified that he suffered

---

[1] The warrant information contained in the presentence report states that Ms. Sane was Defendant's aunt.

from panic attacks and that his "memory [wa]s not really as good as it used to be." Defendant described himself as "a heavy drinker." Defendant expressed remorse for his actions and testified that he loved his grandmother.

Defendant testified that he was "trying to become a better person." He testified that he regretted his actions and he "didn't even like the memory of doing that." He acknowledged that his grandmother was in the room when he killed the dog and that after he killed the dog, he placed it in his grandmother's lap.

Following Defendant's testimony, the trial court considered the following mitigating factors. The trial court declined to apply mitigating factor (11), that Defendant, although guilty, committed the offense under such unusual circumstances that it was unlikely that a sustained intent to violate the law motivated his conduct. *See* T.C.A. § 40-35-113(11). The trial court noted that Defendant "stated he was drunk [and] that he doesn't remember doing it. But then he also stated . . . , I don't like the memory of doing that." The court stated, "[s]o I'm not sure what to believe in that situation." The trial court acknowledged that Defendant had "no prior record," but the court applied "a minimal amount of weight" to that factor.

The trial court next considered any applicable enhancement factors and found as follows:

> [T]he Court is going to put a substantial amount of weight into number five. The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense. So whether the victim is the Dachshund dog or the grandmother, these are two living things that were treated with an exceptional amount of cruelty. And we've got video in this matter that show[s] the dog being slowly put to death over the course of an hour. And then the dog is placed in grandmother's lap after it's dead. That's fairly stout. So I think that qualifies as exceptional cruelty. So I'm going to put a lot of weight into number five.

*See* T.C.A. § 40-35-114(5) ("The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense[.]"). In applying enhancement factor (14), the trial court observed:

> [Defendant] was the lady's grandson. [Defendant] was living with this lady. We should expect comfort and support from our grandchildren. Nowadays there's lots of grandparents raising their grandchildren. And this is not the way anyone should be treated, but let alone what I would like to think

grandchildren should do for their grandparents. This is just unconscionable. So the Court is going to put some weight into factor fourteen.

*See id*. § 40-35-114(14) ("The defendant abused a position of public or private trust[.]"). The trial court further stated,

> based on the cruelty that I've seen in this situation, factor five overrides the other factors, including any factors that would presumptively entitle [Defendant] to probation because, I mean, this sounds like Jeffrey Dahmer or something like that. You know, these people you've got to watch out for [ ] the mistreatment of animals.

At the conclusion of the sentencing hearing, the trial court imposed the maximum sentence of two years in confinement. Defendant timely appealed.

## *Analysis*

Defendant's sole issue on appeal is the trial court's denial of an alternative sentence. Defendant argues that the trial court imposed the harshest sentence available without giving proper weight to Defendant's lack of a criminal history and remorse for his actions. The State contends the trial court acted within its discretion in ordering Defendant to serve his sentence in confinement.

When a trial court denies probation or any other alternative sentence to an eligible defendant and states on the record reasons that are in accordance with the purposes and principles of sentencing, the court's decision is reviewed under an abuse of discretion standard, accompanied by a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If the trial court fails to articulate the reasons for denying an alternative sentence, the "abuse of discretion standard with a presumption of reasonableness" does not apply on appeal and an appellate court can either (1) conduct a de novo review to determine whether there is an adequate basis for denying probation; or (2) remand for the trial court to consider the requisite factors in determining whether to grant probation. *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013).

Before imposing a sentence, the trial court is statutorily required to consider the following factors:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;

- 4 -

(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and
(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. *Id*. § 40-35-210(e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10.

"A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less," with some exceptions. *See id*. § 40-35-303(a) (2019). In determining whether confinement is appropriate, the trial court should consider the following principles:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2019). Additionally, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id*. § 40-35-103(2), -103(4). Factors to be considered in determining whether to impose a sentence of probation include: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

Here, because Defendant received a sentence of ten years or less, he was eligible for probation. T.C.A. § 40-35-303(a) (2019). The record does not reflect that the trial court considered all of the relevant sentencing factors in its analysis. In its brief, the State asserts that "[t]he trial court properly exercised its discretion when it found that confinement was necessary to avoid depreciating the offense based on the extreme[] cruelty and viciousness which [D]efendant inflicted upon the dog." However, the State makes no reference to the record, and the transcript of the sentencing hearing contains no such finding by the trial court. The trial court failed to make a specific finding that confinement was necessary to avoid depreciating the seriousness of the offense or that the circumstances of the offense were "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense [] outweigh[ed] all factors favoring sentencing other than confinement." *See State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006); *see also State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981).

Rather than remand this case to the trial court for consideration of the relevant factors, however, we conclude that the record is sufficient to allow for a de novo review, and we will consider whether the denial of probation was proper.

In considering whether the circumstances of the offenses were especially violent, our supreme court explained in *State v. Trent* that:

> before a trial court can deny probation solely on the basis of the offense itself, the circumstances of the offense *as particularly committed in the case under consideration* must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense.

*Trent*, 533 S.W.3d at 292-93 (emphasis in original). Defendant was convicted of aggravated cruelty to animals. A person commits aggravated cruelty to animals when, with aggravated cruelty and with no justifiable purpose, he intentionally kills or intentionally causes serious physical injury to a "companion animal," which includes dogs. T.C.A. § 39-14-212(a) and (b)(2). Also, the Code defines "aggravated cruelty" as "conduct which is done or carried out in a depraved and sadistic manner and which tortures and maims an animal. . . ." T.C.A. § 39-14-212(b)(1).

In order to support a denial of probation based upon a finding that the circumstances of the offense were "especially violent, horrifying, shocking, reprehensible, [or] offensive" the record must demonstrate that Defendant's conduct was more egregious than that which is proscribed by the statute. *See Trotter*, 201 S.W.3d at 654. Turning to the circumstances of this case, we agree with the trial court's assessment that Defendant's actions were exceptionally cruel. The information contained in the arrest warrant, which is included in

- 6 -

the presentence report, states that Defendant put a blanket over the dog and "punch[ed] []it as hard as he could." It further states that, in the video, "you can see the dog trying to get away. [Defendant] puts his hand around its mouth and nose like he's trying to smother it th[e]n continues to beat the dog for nearly an hour as the dog tries to run off."

Clearly, Defendant intentionally killed, with aggravated cruelty and no justifiable purpose, a companion animal. We believe that the evidence also demonstrates that Defendant's conduct was more egregious than is necessary to establish the elements of the offense. The record supports a finding that confinement is necessary to avoid depreciating the seriousness of the offense and that the circumstances of the offense were especially violent and reprehensible. Defendant repeatedly punched and suffocated his elderly, disabled grandmother's companion dog of ten years for approximately one hour and then placed the dead dog's body in his grandmother's lap. He did this while his grandmother was present in the room with him. The dog was like family to Defendant's grandmother, and she grieved the loss of the dog. Although Defendant expressed remorse for his actions, he minimized his culpability by claiming that he was intoxicated and did not remember killing the dog, and the trial court questioned Defendant's credibility concerning his memory of the incident.

The presentence report indicates, and the trial court found, that Defendant had no prior criminal history; however, we note that, when asked on direct examination whether he had any prior criminal record, Defendant responded, "Other than misdemeanors." Regarding Defendant's social history, the record reflects that Defendant graduated from high school, that he had a spotty employment history, that he drank alcohol daily, and that his alcohol consumption had "led to family conflict, employment problems, violations of the law, and physical and mental health concerns." Regarding Defendant's physical and mental health, Defendant began counseling shortly before his sentencing hearing to address his panic attacks and anxiety. Defendant also reported that he had been "hospitalized for mental health concerns approximately six times in the past."

Upon our de novo consideration of all the factors, we conclude that the trial court did not err in denying probation. Defendant is not entitled to relief in this appeal.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

- 7 -